## 18507

W. D. WELBORN, Joe S. Harris, Billy Joe Johnson, Ronald G. Lee, Paul E. Lindsey, and Gene Watson, Individually and on behalf of other persons similarly situated, Appellants, v. R. Martin PAGE, d/b/a Greenville Body Works and/or Greenville Auto Parts and F. M. Campbell, Respondents.

(148 S. E. (2d) 375)

*Messrs. Rainey, Fant & Horton,* of Greenville, *for Appellants,*

*Messrs. Wofford & Snyder* and *Love, Thornton, Arnold & Thomason,* of Greenville, *for Respondents,*

May 12, 1966.

Moss, Chief Justice.

The sole question for determination in this appeal is whether or not the location and operation of an automobile wrecking service on the property of the respondents on Blassingame Road, near the City of Greenville, South Carolina, will constitute a nuisance.

This action was instituted by six owners of residential property in the Blassingame Road area, seeking to permanently enjoin the respondents from locating, maintaining and operating an automobile wrecking service on the property of F. M. Campbell, on the ground that its future location and operation will constitute a nuisance. The respondents assert that they only propose to continue the operation of a pre-existing business and that such was in existence and was being operated when the appellants, residing on Blassingame Road, constructed their homes thereon; that the respondents' property was and is commercial in character and that the neighborhood is not predominantly a residential one; and that neither the location of an automobile wrecking service on the premises in question nor the operation thereof would constitute a nuisance.

The record shows that F. M. Campbell has owned since 1950 a tract of land containing 6.89 acres, which he leased, on October 15, 1964, to R. Martin Page, lying on the northern side of Blassingame Road in the West Gantt community of Greenville County. This tract is rectangular in shape, having a frontage on the aforesaid road of 600 feet, a rear line of 600 feet and parallel side lines 500 feet in length. The southwest corner of the Campbell property is about 415 feet easterly from the intersection of Blassingame Road with White Horse Road, which runs in a northerly-southerly direction. Blassingame Road runs generally in an East-West direction and is approximately 600 feet from Interstate Highway 85, where it bounds the respondents' property. The western boundary of said property runs back from Blassingame Road 500 feet, the first 185 feet thereof forms a common boundary with the lot of Billy Joe Johnson, one of the appellants. The rear ends of three lots which front on White Horse Road constitute the remainder of this boundary, one of these lots is occupied by a florist shop, on the second there is a residence, and on the third, a Fun Center, a combination pool hall and beer saloon. The rear or northern line of respondent's property is 600 feet long and is adjoining the rear portion of the freight terminal owned by Pilot Truck Lines, for a distance of 50 feet. This terminal is well lighted and operates on a twenty-four hour schedule, and approximately forty laborers work there, mostly at night, loading the freight onto the trucks with fork lifts. The remainder of this rear line is bounded by a dairy farm on which no residences are located. The eastern boundary of respondents' land is a swamp. The southern boundary fronts on Blassingame Road. On the southern side of Blassingame Road, immediately in front of respondents' property, are a number of unsold lots in an old subdivision which have been allowed to grow up in broom straw and small bushes. There are two houses located on the southern side of Blassingame Road, neither of which are directly across from respondents' property. Between the unsold lots in

the aforementioned subdivision and White Horse Road
is a Texaco Filling Station which operates twenty-four
hours per day and faces White Horse Road, with an
entrance thereto from Blassingame Road. This Texaco
Station has flood lights and a large lighted Texaco sign
approximately one hundred feet high, which illuminates
the yards of all the nearby residences. This station serves
those who travel on I-85. Across the White Horse Road
from this Texaco Station is a Pure Oil Station and a
restaurant known as the "Teddy Bear", which operates
twenty-four hours per day, and which also serves those
who travel on I-85.

The next street to the south of Blassingame Road is
Hillcrest Street and there are houses on both sides of this
street. Only four houses are located on the northern side
of Hillcrest Street and the nearest one of these to respon-
dents' property is 175 feet, the second is approximately
200 feet, the third 300 feet and the fourth 400 feet, none
of which face the respondents' property. The houses located
on the southern side of Hillcrest Street are, of course, locat-
ed even a greater distance from respondents' property,
and immediately behind these houses is the right of way
for Interstate Highway 85 and its access roads. We point
out that Blassingame Road and Hillcrest Street intersect
White Horse Road at the same point, it thus appearing
that Hillcrest Street is not parallel to Blassingame Road
but runs at a thirty degree angle thereto in an easterly
direction. There is no zoning ordinance applicable to any
of the property here involved and there are no restrictive
covenants of any kind applicable to the lands of the respon-
dents or the residential lots lying between the south side
of Blassingame Road and the north side of the right of
way of I-85. It appears that some restrictive covenants
have been applied to some lots on Hillcrest Street but not
those immediately in front of respondents' property. There
are no restrictive covenants applicable to any lots on Blassin-
game Road.

Immediately following the purchase of the land in question by F. M. Campbell, he began to place junked automobiles thereon. These automobiles did not remain permanently on the land but beginning in 1953 until the land was cleared for grading in December, 1964, Campbell had stored on this property between seventy-five and three hundred automobiles. In 1958 he constructed a concrete block building which was used as a garage and for a motorcycle dealership and there was erected a sign on Blassingame Road advertising this business as the "West Gantt Garage". The only objection to the use of the premises by Campbell was in the testing of motorcycles and this was eliminated because of the discontinuance of the motorcycle end of the business.

It appears that R. Martin Page intends to grade the lot in question with sufficient slope thereon to provide adequate drainage. It is to be covered with gravel or crushed stone. After the premises have been so prepared, Page proposes to establish thereon an automobile wrecking service and to erect a building on the premises from which automobile parts will be sold. A part of the lot will be used as a parking lot. The operation of this wrecking service and the sale of automobile parts will be conducted from 8:30 A. M. to 6:00 P. M.

Page intends to move upon the leased premises some one thousand to one thousand two hundred late model wrecked automobiles which he purchases from insurance companies. They will be arranged in an orderly manner upon the premises. These cars will be dismantled if and when a part is needed therefrom, such dismantling is done with wrenches and tools and occasionally a cutting tool is used if the car is rusty and bolts difficult to remove because of such. There will be no cutting up of the bodies of the automobiles in this dismantling process. After the car has been dismantled and the parts removed therefrom, the car body "remains" are hauled away from the premises by a junk dealer, Page receiving no payment therefor. However,

he does receive 50% of the sale price of any steel or cast iron from the dismantled automobiles. Page testified that any worthless automobile tires would be hauled away rather than being burned on the premises. There is no testimony in this record that in dismantling the automobiles that the interior thereof will be burned on the premises.

After issue had been joined in this case it was, by consent of all parties, referred to a special referee, with authority to him to take the testimony and to report his findings of fact and conclusions of law. The said special referee, after taking the testimony and hearing the evidence, filed his report on May 14, 1965, in which he held that the proposed location, operation and maintenance of an automobile wrecking service on the property of the respondent Campbell would constitute a nuisance *per accidens,* and recommended that an order be issued permanently enjoining the respondents from locating, maintaining or operating the automobile wrecking service or other related business on the property in question.

The respondents here duly excepted to the findings and recommendations of the special referee and such came on to be heard before the Honorable Frank Eppes, Judge of the Thirteenth Circuit, who, by his decree, dated July 30, 1965, reversed substantially all material findings of fact and conclusions of the special referee, holding that the proposed location and operation of an automobile wrecking service and salvage parts store upon Campbell's property by Martin Page would not constitute a nuisance either *per se* or *per accidens.* Thus, he overruled all recommendations of the special referee and denied any relief to the present appellants. This appeal followed.

The first question for determination is whether or not the circuit judge committed error in considering and overruling certain findings of fact made by the special referee when such were not challenged by proper exceptions. It is true that conclusions of a special referee, if not challenged by proper exceptions, become the law of

the case. *Carsten v. Wilson,* 241 S. C. 516, 129 S. E. (2d) 431. We have carefully considered the exceptions of the respondents to the report of the special referee and find that such challenged each and every finding of fact, conclusion of law and recommendations made by said referee. This being true, this question must be answered adverse to the contention of the appellants. Additionally, this question was not presented to or passed upon by the circuit judge. It is, therefore, not properly before us for decision. *Cleveland v. Cleveland,* 243 S. C. 586, 135 S. E. (2d) 84, 1 A. L. R. (3d) 203. This being an equitable action, the factual findings of a referee are subject to review by the circuit court and may be reversed if they are contrary to the preponderance of the evidence. *Watson v. Wall,* 239 S. C. 109, 121 S. E. (2d) 427.

The other question for determination is whether the circuit judge committed error in overruling the findings of fact and recommendations of the special referee and holding that the location and operation of an automobile wrecking service on the property of the respondents would not constitute a nuisance *per accidens.*

It is the position of the appellants that the location, maintenance and operation of an automobile wrecking service on the property of F. M. Cambell will constitute a nuisance *per accidens* and will inevitably result in: (1) increased traffic hazards in the area; (2) creation of breeding places for flies, mosquitoes, rats and other pests; (3) unusual, severe and prolonged noise and confusion from the towing and hauling in, out and about the premises of wrecked motor vehicles and the breaking up and dismantling of such vehicles and the loading and unloading of parts, scrap and junk; (4) the creation and discharge of noxious fumes, odors and smoke; (5) the general destruction of the natural and cultivated beauty and character of a residential area; (6) the destruction and depreciation of the quiet enjoyment of their homes by the residents; (7) creation of permanent conditions harmful to the safety, health and well-being of their families and themselves;

and (8) the decrease and depreciation in the value of the homes of the residents of the area.

While the business of wrecking automobiles and salvaging the parts is a legitimate one and not a nuisance *per se,* it may become a nuisance *per accidens* by reason of its improper location or the manner in which it is conducted, and where an exclusively or predominantly residential character may be ascribed to the neighborhood in which it is located and operated, the business as conducted in such location may constitute a nuisance in fact or *per accidens. Bowlin v. George,* 239 S. C. 429, 123 S. E. (2d) 528; *Parkerburg Builders Material Co. v. Barrack,* 118 W. Va. 608, 191 S. E. 368, 192 S. E. 291, 110 A. L. R. 1454; and 84 A. L. R. (2d), at page 654. Therefore, if the appellants are entitled to an injunction prohibiting this otherwise lawful business activity, they must show, by a preponderance of the evidence, that the location and operation of such business by the respondents will constitute a nuisance in fact or *per accidens. Strong v. Winn-Dixie Stores, Inc.,* 240 S. C. 244, 125 S. E. (2d) 628. In the *Strong* case, we said:

"However, equity will not interfere where the anticipated nuisance is doubtful, contingent, or conjectural. To entitle one to injunctive relief against a threatened or anticipated nuisance, public or private, it must appear that a nuisance will inevitably or necessarily result from the act or thing which it is sought to enjoin. It is not enough to show that the anticipated acts threatened to or may become a nuisance, but the evidence must show that a nuisance is inevitable from the proposed use of the premises or will necessarily result. If the proposed business may be operated in such a way as not to constitute a nuisance, an injunction will not be issued. The alleged nuisance must be the necessary result of the operation of the business. 39 Am. Jur, Nuisances, §§ 151 and 152. Cases dealing with the question are found collected in the following annotations: 7 A. L. R. 749, 26 A. L. R. 937, 32 A. L. R. 724, 55 A. L. R. 880."

The special referee found that the location and operation of an automobile wrecking service on the Campbell property would constitute a substantial and material encroachment into a residential area by a business operation offensive and repugnant to the neighborhood and the residents thereof. This finding of fact was reversed by the circuit judge and he held that such area is not exclusively, predominantly or unquestionably residential. A careful review of all the evidence convinces us of the correctness of this finding by the circuit judge. It logically follows, therefore, that the towing in of wrecked motor vehicles, the dismantling of the same in the manner heretofore described, and the hauling out from the premises the dismantled parts and scrap and junk would not constitute a nuisance in fact or *per accidens*.

It is contended by the appellants that they will be deprived of the peaceful enjoyment of their homes by the operation of an automobile wrecking service on the Campbell property because it will, of necessity, create a traffic hazard in said area. The special referee found that the use of the Campbell property as a site for an automobile wrecking service will result in a substantial increase in motor vehicle traffic on the Blassingame Road but he did not find that such would constitute a traffic hazard. The circuit judge found that there was no evidence from which it may be reasonably concluded that the movement of traffic to and from the Campbell property will inevitably endanger the health of the appellants or disturb them in the reasonable enjoyment of their homes. It is undisputed that the automobile wrecking service here involved will be conducted from 8:30 A.M. to 6:00 P.M. A part of the premises will be set aside to be used as a parking lot for customers and employees. There is no testimony in this record that there will be a mass entrance and exodus to and from the automobile wrecking service. The reasonable assumption is that the motor vehicle traffic to and from such place will be spread over the usual business hours.

It would be unreasonable to hold that a mere increase in traffic alone in an unspecified and unpredictable amount would constitute a hazard. There is no reasonable basis for holding that the normal traffic in the towing in of wrecked motor vehicles and the hauling out from the said premises of parts, scrap and junk, or the visiting of said premises by customers would create a nuisance *per accidens*. *Strong v. Winn-Dixie Stores, Inc.*, 240 S. C. 244, 125 S. E. (2d) 628, and *Winget v. Winn-Dixie Stores, Inc.*, 242 S. C. 152, 130 S. E. (2d) 363.

The appellants also contend that the proposed operation of the automobile wrecking service would create a breeding place for flies, mosquitoes, rats and other pests. There is a total absence of any evidence in the record to sustain this contention. As a matter of fact, the special referee found that it was possible to carry on the operation of the automobile wrecking service without creating these conditions.

The circuit judge held that there was no evidence to sustain appellants' contention that the operation of the automobile wrecking service will inevitably result in unusual, severe and prolonged noise and confusion. We think that he was correct in so holding. The appellants offered no postive evidence in that regard and the testimony of the respondents shows that they will be able to conduct their business without unusual, severe and prolonged noise and confusion. The special referee made no finding that the operation of the business would inevitably result in such noise and confusion.

The appellants next contend that the operation of the business will inevitably result in the creation and discharge of noxious fumes, odors and smoke. The testimony is that occasionally a cutting torch is used to dismantle parts when the car is rusty and bolts difficult to remove because of the rust. The special referee found that wrecked automobile bodies would be burned out, thereby causing noxious and unpleasant fumes, odors and smoke.

However, there is no testimony that the wrecked automobile bodies will be burned out on the premises. The circuit court held that there had been no showing that the creation of noxious fumes, odors and smoke would inevitably result from the operation of the business. We think that the appellants have again failed to establish their contention by the preponderance of the evidence.

Finally, it is contended by the appellants that if this automobile wrecking service is permitted to operate on the Campbell property such will depreciate the value of the other property in the area. Assuming that the evidence shows that some depreciation will result because of the location and operation of an automobile wrecking service on the Campbell property, this would not be sufficient in itself to warrant granting an injunction in this case. A use of property which does not create a nuisance cannot be enjoined or a lawful structure thereon abated merely because it renders neighboring property less valuable. *Strong v. Winn-Dixie Stores, Inc.*, 240 S. C. 244, 125 S. E. (2d) 628.

We conclude, as did the circuit judge, that the evidence upon which the appellants ask for an injunction because of an anticipated nuisance is doubtful, contingent and conjectural and such does not show that the anticipated acts will inevitably or necessarily result in the creation of a nuisance *per accidens*. Equity will not interfere by the granting of the extraordinary remedy of injunction where the anticipated nuisance is doubtful, contingent or conjectural. If the operation of this automobile wrecking service should result in a nuisance in fact or *per accidens* it can be remedied at that time by appropriate action.

In every civil action the prevailing party is entitled to recover costs and disbursements from the adverse party and this rule prevails in equity cases unless a contrary direction is made by the court. The special referee, having found in favor of the present appellants,

recommended that the costs of this action be paid by the present respondents. The circuit judge reversed the findings of fact and the conclusions of law of the special referee and directed that the costs of the action be paid by the present appellants. The recommendation of the special referee and of the circuit judge did nothing more than to declare that the prevailing parties were entitled to recover costs. The appellants now take the position that since the respondents did not except to the recommendation of the special referee that they were entitled to costs such became the law of the case and the circuit judge was in error in holding otherwise. The position of the appellants is without merit because in this case costs have been awarded to the prevailing parties against the losing parties strictly in accordance with the provisions of Sections 10-1601 and 10-1602 of the Code.

The exceptions of the appellants are overruled and the judgment below is affirmed.

Affirmed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and RHODES, Acting Associate Justice, concur.