**Ronald D. ALLISON and Bonnie J. Allison, John Dozzo and Barbara Dozzo, Plaintiffs-Appellees,**

v.

**Calvin SMITH, Abigail Smith, Frank Smith, Mark J. Ricken Smith, and Nancy Eaton Rutan, Defendants-Appellants.**

No. 82CA1484.

Colorado Court of Appeals, Div. III.

Dec. 20, 1984.

Mehaffy, Rider, Windholz & Wilson, James A. Windholz, Boulder, for plaintiffs-appellees.

David M. Kanigel, Evergreen, for defendants-appellants.

METZGER, Judge.

In this nuisance action between the owners of two adjoining properties, defendants, Calvin, Abigail, Frank, Mark J. Ricken Smith, and Nancy Eaton Rutan (the Smiths), appeal the trial court's judgment awarding plaintiffs, Ronald and Bonnie Allison and John and Barbara Dozzo (the Allisons), a permanent injunction and $5,000 in damages. We affirm.

The Allisons are among several family members who, since acquiring it from their father in 1974, have jointly owned a small weekend cabin on a .37-acre wooded mountain lot in Gilpin County. The Smiths own a larger tract, consisting of four lots, which adjoins the Allisons' property on two sides.

The neighborhood consists mostly of small recreational cabins, and has been zoned for residential use since 1975. The Smiths have operated a variety of businesses on their property since the early 1960's including a well-drilling service, new and used car dealerships, and several construction businesses. The Smiths customarily stored and discarded limited quantities of equipment from these businesses on three lots which adjoined one side of the Allisons' property. The parties agree that the Smiths' activities, prior to the 1975 enactment of Gilpin county zoning ordinances, make them an authorized nonconforming user under those ordinances.

After 1974, however, the Smiths expanded their business and a dramatic increase in the accumulation of equipment on their land resulted. By the late 1970's all four of the Smiths' lots, especially the one directly across from the Allisons' front porch, were filled with many items including: inoperable automobiles, large rigs, a bulldozer, tons of scrap metal, pipe, new and used construction materials, drums of petrochemicals, large amounts of everyday litter and rubbish, and other "obnoxious debris." The Smiths had also installed several above-ground 2,000-gallon oil and fuel storage tanks directly uphill from the Allisons' cabin. Additionally, the Smiths poured oil on the ground to "keep the dust down." This oil, carried by rain and snow melt from the Smiths' land onto the Allisons' property, killed much vegetation on their land, entered their water well, making the water unusable, and created a persistent odor.

As a result of these new and unpleasant conditions the Allisons, who had used the cabin frequently on weekends and during vacations every year since 1977, ceased using it entirely. On several occasions they allowed various friends to use the cabin, but none of the friends, after visiting once, ever asked to use it again.

The Allisons sued for damages and injunctive relief, claiming that, since 1974, the Smiths' property had become a nuisance and had substantially interfered with the use and enjoyment of their property. The trial court found that the condition of the Smiths' property constituted a private nuisance and awarded the Allisons $1,000 for each year of non-use of their property, for a total of $5,000. The court ordered the Smiths to restore their property to its 1974 state, requiring them to remove substantial quantities of rubbish and equipment. The Smiths were also ordered to return the fourth lot, which was immediately adjacent to the Allisons' front porch, to its prior vacant condition.

I.

The Smiths contend the trial court erred as a matter of law in its finding of nuisance since there was no physical invasion of the Allisons' property. We disagree.

Private nuisance is a non-trespassory invasion of another's interest in the

private use and enjoyment of his land. To demonstrate its existence a plaintiff must show that the defendant unreasonably and substantially interfered with the use and enjoyment of his property. *See Lowder v. Tina Marie Homes Inc.*, 43 Colo.App. 225, 601 P.2d 657 (1979); *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661 (1973). The defendant's liability rests on a duty he owes as an occupier of land to prevent conditions on his land, particularly those he himself has created, from injuring others. *See Moore v. Standard Paint & Glass Co.*, 145 Colo. 151, 358 P.2d 33 (1960); *see also* W. Prosser, *Torts* § 57 (4th ed. 1971).

■ Even if a particular use complies with zoning regulations, it may still constitute a private nuisance if there is a substantial interference with a plaintiff's use and enjoyment of his land. *Hobbs v. Smith*, 177 Colo. 299, 493 P.2d 1352 (1972). *See also Northwest Water Corp. v. Pennetta*, 29 Colo.App. 1, 479 P.2d 398 (1970).

The existence and nature of Smith's activities in accumulating junk and obnoxious debris on property bordering the Allisons' was virtually undisputed, as was the effect of this accumulation on the Allisons' enjoyment of their property. Thus, the trial court did not err in concluding that the Smiths unreasonably and substantially interfered with the use and enjoyment of the Allisons' property. *See Lowder v. Tina Marie Homes, supra; Miller v. Carnation Co., supra.*

■ We note, however, that not all challenged activities found to be unsightly eyesores, as here, constitute an actionable private nuisance. To constitute a nuisance, it is not enough that a thing such as accumulated debris and rubbish be unsightly or that it offend one's aesthetic sense. *Mathewson v. Primeau*, 64 Wash.2d 929, 395 P.2d 183 (1964). The unreasonable and substantial interference tests enunciated in *Lowder* and *Miller, supra*, necessarily include a consideration whether the questioned activity is reasonable under all the surrounding circumstances. *See Murray v. Young*, 97 A.D.2d 958, 468 N.Y.S.2d 759 (1983). Thus, legitimate but unsightly ac-

tivity such as the accumulation of debris on land or the operation of a junkyard or auto salvage business may become a private nuisance if it is unreasonably operated so as to be unduly offensive to its neighbors, particularly when it is located in a residential district. *See Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692 (1974); *Wellborn v. Page*, 247 S.C. 554, 148 S.E.2d 375 (1966); *Parkersburg Builders Material Co. v. Barrack*, 118 W.Va. 608, 192 S.E. 291 (1937).

■ This court employed a similarly inclusive approach in *Northwest Water v. Pennetta, supra*, where a homeowner sued in nuisance when an unsightly water tank was erected next door to his home. There we held that, in deciding whether a private nuisance exists, a factual determination must be made:

"Whether the various factors of interference asserted by the plaintiffs as to their use and enjoyment of their home were a substantial invasion of their interests as measured by the standard of their effect upon a normal person in the same or similar circumstances."

■ The trial court here made such a determination, its findings were supported by the evidence, and we will not disturb it on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## II.

■ The Smiths' assertion that the Allisons "came to" the nuisance, and therefore have no claim, is misplaced, since the only activities for which relief was granted occurred after the Allisons' 1974 acquisition of their property. The Allisons have not complained of any conditions or activities which predate their ownership. Furthermore:

"The doctrine of voluntary assumption of risk has no application in nuisance cases to relief from liability. Thus it is no defense to an action for nuisance that the plaintiff 'came to the nuisance' by knowingly acquiring property in the vicinity of the defendant's premises.... The duty

to use due care, it seems, is not abated toward one who has elected to live or reside in the vicinity of the nuisance." 2 F. Harper & F. James, *The Law of Torts* § 1.28 (1956).

This general principle has been cited with approval by our supreme court. *See Krebs v. Hermann*, 90 Colo. 61, 6 P.2d 907 (1931).

### III.

The Smiths next contend that the trial court's award of damages is unsupported by the evidence. We disagree.

The trial court had no exact formula to use in awarding damages since use and enjoyment of land are subjective in nature. However, that situation does not bar an award. Although damages may not be calculable with mathematical exactitude, so long as the plaintiff introduces some evidence which is sufficient to allow a reasonable estimate of damages, it is incumbent upon the trier of fact to determine a monetary award which will adequately compensate the plaintiff. *Great West Food Packers, Inc. v. Longmont Foods Co., Inc.*, 636 P.2d 1331 (Colo.App.1981); *see Cope v. Vermeer Sales & Service of Colorado, Inc.*, 650 P.2d 1307 (Colo.App. 1982).

In fixing the amount of damages, a trial court is vested with wide discretion, and its award will not be set aside unless it is grossly and manifestly erroneous. *See Aerospace Realty Co. v. Tooth, Ltd.*, 539 P.2d 1314 (Colo.App.1975) (not selected for official publication). The normal measure of damages for injury to real property is market value before and after the injury. *Zwick v. Simpson*, 193 Colo. 36, 572 P.2d 133 (1977).

The trial court heard extensive expert testimony on the market value of the Allisons' property before and after 1974. Based on this testimony it found a diminution in market value of $8,200 arising from the loss of the well, and an additional diminution of $7,400 since 1974 because of the unsightliness resulting from the Smiths' use of their property.

As well, there was ample evidence to support the trial court's award of $5,000 for five years' loss of use. It was unrebutted that the Allisons had used the cabin regularly for family gatherings and recreation six to eight times per year and that the Smiths' activities caused them to forego such use.

Given this evidence, the trial court was well within its discretion in fixing damages at $1,000 per year.

Judgment affirmed.

BERMAN and TURSI, JJ., concur.