**Roland E. WERNKE, Appellant–
Defendant,**

**v.**

**John HALAS and Karen Halas and James
R. Peacock and Geraldine Peacock,
d/b/a Roger's Landscape & Gift Shop,
Appellee–Plaintiffs.**

No. 32A01–9112–CV–369.

Court of Appeals of Indiana,
First District.

Sept. 28, 1992.

---

Jeffrey K. Baldwin, Baldwin & Baldwin, Danville, for Roland E. Wernke.

Robert A. Wood, Kendall, Wood, Lowry & Kessinger, Danville, for John Halas and Karen Halas.

BAKER, Judge.

America's wise and thoughtful poet laureate, Robert Frost, once wrote that "good fences make good neighbors."[1] Lamentably, not everyone has read Frost.

In this private nuisance action, defendant-appellant Roland Wernke challenges the trial court's grant of summary judgment in favor of Wernke's neighbors, plaintiff-appellees John and Karen Halas. Wernke also appeals the trial court's subsequent award of compensatory damages, punitive damages, and attorney fees.

## FACTS

The facts taken in the light most favorable to the non-movant, Wernke, reveal he and the Halases are next door neighbors, with abutting side yards. The Peacock family owns the other lot abutting Wernke's property. In 1990, after a period of mounting neighborhood tension over the fate of a tree growing astride the common Wernke–Halas–Peacock boundary, and during which the parties complained about the appearance and maintenance of each other's land, Wernke built a privacy fence facing the Halas property. The fence is constructed of vertically placed boards, and the parties agree it is no more than six feet tall. On the side of the fence facing the Halases, Wernke placed some vinyl strips and a license plate over some of the cracks between the boards. He also attached a section of orange plastic construction fencing to the Halas side of the fence. The orange fencing ran almost the length of the board fence and was approximately five feet tall.

Wernke placed support posts sunken in concrete at regular intervals along the fence line. One day, as Wernke's work on the fence was progressing, vandals scrawled "Fuck J.H.," "Fuck R.P.," and

"D. Head" into the wet concrete of a support post. No part of the concrete, the post, or the fence as a whole encroached upon any of Wernke's neighbors' property.

Prior to Wernke's erection of the fence, the Peacocks nailed a toilet seat to a tree facing Wernke's yard. The Peacocks removed the seat after several months, and Wernke, in a display of equal taste, set up his own toilet seat, mounting the seat and its lid on a piece of plywood placed atop a post overlooking his neighbors' land. A brown spot, alleged by the Halases to represent human excrement, was painted on the plywood within the ring inscribed by the seat. Like the fence, the toilet rested entirely on Wernke's property.

The Halases filed suit in September 1990, alleging the toilet and the fence with all its accoutrements, including the graffiti, constituted nuisances. On the advice of his attorney, Wernke removed the license plate from the fence, and the toilet and graffiti prior to the hearing on the Halases' motion for summary judgment. After the summary judgment hearing, the judge found as a matter of law that the toilet, the graffiti, and the fence constituted a nuisance. He therefore ordered the orange fencing and the vinyl strips removed, and Wernke complied.

Several weeks after summary judgment was entered, the court held a damages hearing. The Halases were awarded $5,600 for the loss in the rental value of their property during the period the graffiti, the toilet and the objectionable portions of the fence were visible, $2,400 for the discomfort and annoyance they suffered, $5,000 in punitive damages, and $3,937.50 in attorney fees. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

#### I

#### STANDARD OF REVIEW

■ In reviewing a trial court's decision on a motion for summary judgment, we

1. R. Frost, "Mending Wall" (1914), in E. La-   them, *Poetry of Robert Frost* 33–34 (1979).

apply the same standards as the trial court and review all the pleadings, depositions, answers to interrogatories, affidavits, and admissions in the light most favorable to the non-movant. *Tucher v. Brothers Auto Salvage Yard, Inc.* (1991), Ind.App., 564 N.E.2d 560, 562, *trans. denied.* Summary judgment is appropriate only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Id.; Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1323. Summary judgment proceedings are not to be used as an abbreviated trial. *Young v. City of Franklin* (1986), Ind., 494 N.E.2d 316. Moreover, they are not the proper forum to weigh disputed evidence relating to material factual issues. *Jarrell v. Monsanto Co.* (1988), Ind.App., 528 N.E.2d 1158, 1161, *trans. denied.* If, however, there are no disputed material facts, our task on review is to determine whether the trial court correctly applied the law. *Fox v. Hawkins* (1992), Ind.App., 594 N.E.2d 493, 495.

## II

### EXISTENCE OF NUISANCE

In Indiana, nuisances are defined by statute. IND. CODE 34–1–52–1 provides:

> Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance'." W. Prosser and W. Keeton, *Prosser and Keeton on Torts*, § 86, p. 616 (5th ed. 3rd printing 1989). Our statutory language is therefore necessarily broad,[2] but the general tenets of nuisance law are clear.

Nuisances may be either public or private. A public nuisance is one which affects an entire neighborhood or communi-

ty, while a private nuisance affects only an single person or a determinate number of people. *Wendt v. Kerkhof* (1992), Ind. App., 594 N.E.2d 795, 797; *Blair v. Anderson* (1991), Ind.App., 570 N.E.2d 1337. The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property. *Cox v. Schlachter* (1970), 147 Ind.App. 530, 534, 262 N.E.2d 550, 553.

Both public and private nuisances are further subdivided into nuisances *per se*, or nuisances at law, and nuisances *per accidens*, or nuisances in fact. "A nuisance *per se*, as the term implies, is that which is a nuisance in itself, and which, therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist." The *Windfall Manufacturing Co. v. Patterson* (1897), 148 Ind. 414, 420, 47 N.E. 2, 4. Thus, for example, a house of prostitution and an obstruction that encroaches on the right-of-way of a public highway are nuisances *per se. Id.* See also *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72 (blocked highway). On the other hand, an otherwise lawful use may become a nuisance *per accidens* by virtue of the circumstances surrounding the use. *See Yeager and Sullivan, Inc. v. O'Neill* (1975), 163 Ind.App. 466, 474, 324 N.E.2d 846, 852 and cases cited therein; *Dammeyer v. Vorhis* (1916), 63 Ind.App. 427, 431, 113 N.E. 764, 766.

Logically, therefore, the determination that something is a nuisance *per se* is a question of law for the court, 66 C.J.S. *Nuisances* § 153 (1950), and the determination of "whether that which is not in itself a nuisance is a nuisance in fact" is a question for the jury or the judge as trier of fact. *Shatto v. McNulty* (1987), Ind.App., 509 N.E.2d 897, 899. The latter determination is to be made by the trier of fact in light of all the surrounding facts and circumstances. *Yeager and Sullivan, Inc., supra; Davoust v. Mitchell* (1970), 146 Ind.

---

**2.** "It is indeed impossible, having regard to the wide range of subject-matter embraced under the term nuisance, to frame any general definition." W. Prosser and W. Keeton, *Prosser and Keeton on Torts* § 86, p. 616 n. 4 (5th ed. 3rd printing 1989) (quoting Garrett and Garrett, *Law of Nuisances*, 3d Ed.1908, 4; Winfied, *Law of Tort*, 1937, 462; Cooley, *Torts*, 2d ed. 1888 672; Terry, *Leading Principles of Anglo–American Law*, 2884 § 434).

App. 536, 540, 257 N.E.2d 332, 335; *Meeks v. Wood* (1918), 66 Ind.App. 594, 597, 118 N.E. 591, 592. The dispositive question "is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits." *Wendt, supra*, 594 N.E.2d at 797.

■ The essence of these holdings is unmistakable and straightforward. The conclusion that something is a *per accidens* nuisance is a conclusion to be reached only after a full review of the material facts. Summary judgment, which by definition is meant to resolve only with those cases lacking material factual disputes, is therefore rarely appropriate in *per accidens* nuisance cases. Bearing this proposition in mind, we turn to the alleged nuisances here.

*The Fence* [3]

In Indiana, at common law, a landowner had no nuisance claim against an adjacent landowner for erection of a fence that did not encroach on the landowner's property. *Giller v. West* (1904), 162 Ind. 17, 20–21, 69 N.E. 548, 549–50. The rule applied regardless of the adjacent landowner's motive in erecting the fence and regardless of the ugliness of the fence. *Id.* "The law does not require that ... fences shall be constructed of fine materials, or that they shall be attractive in appearance." *Id.* at 21, 69 N.E. at 549.

Five years after *Giller*, in 1909, the legislature modified the common law. IND. CODE 32–10–10–1 [4] provides "[a]ny fence or other structure in the nature of a fence unnecessarily exceeding six feet (6') in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a nuisance." IND. CODE 32–10–10–2 provides affected landowners with a cause of action for damages and abatement as for any other nuisance.

■ Although these statutes provide a landowner aggrieved by an alleged spite fence with the full range of nuisance actions and remedies, they are in derogation of the common law, and must therefore be strictly construed. *See Fox, supra.* Accordingly, the first predicate to a nuisance action for an alleged spite fence is that the fence exceed six feet in height. If the fence is above six feet in height, the inquiry proceeds to the questions of the necessity for the fence's height, and the defendant's intent in erecting the fence. Because the legislature framed the statute to exclude fences six feet in height or less from its ambit, however, the common law rule of *Giller* still controls in cases involving those fences.

■ The fence here, as the parties agree, is no more than six feet tall. Therefore, regardless of how unsightly the fence may be, with its attached vinyl strips, license plate, and orange construction site fencing, it cannot be a nuisance. *Giller, supra.* Therefore, the trial court improperly applied the law in determining the fence was a nuisance. Indeed, because the height of the fence is undisputedly less than the statutory minimum, Wernke is entitled to judgment as a matter of law. *Id.; Fox, supra.*

*The Toilet*

■ In Indiana, a plaintiff who has proved a *per accidens* nuisance may recover aesthetic damages. *Blair, supra*, at 1341 (Robertson, J., concurring and dissenting) (citing *Rust v. Guinn* (1981), Ind.App., 429 N.E.2d 299). These are damages for the "annoyance, discomfort, and inconvenience" caused by the nuisance. *Rust v. Guinn* (1981), Ind.App., 429 N.E.2d 299, 304. It does not follow, however, that a use or structure may constitute a nuisance merely on the basis of displeasing aesthetics.

■ On the contrary, it is well-settled throughout this country that, standing

---

**3.** Although all the items the Halases complained of have been abated, we refer to them in the present tense for clarity.

**4.** Originally promulgated by Acts 1909, ch. 26, § 1, p. 70.

alone, unsightliness, or lack of aesthetic virtue, does not constitute a private nuisance.[5] *Haehlen v. Wilson* (1936), 11 Cal. App.2d 437, 54 P.2d 62; *Allison v. Smith* (1984), Colo.App., 695 P.2d 791; *B & W Management, Inc. v. Tasea Investment Co.* (1982), D.C.App., 451 A.2d 879; *Jillson v. Barton* (1975), 139 Ga.App. 767, 229 S.E.2d 476; *Bader v. Iowa Metro. Sewer Co.* (1970), Iowa, 178 N.W.2d 305; *Mahlstadt v. City of Indianola* (1959), 251 Iowa 222, 100 N.W.2d 189; *Ness v. Albert* (1983), Mo.App., 665 S.W.2d 1, *trans. denied; Crabtree v. City Auto Salvage Co.* (1960), 47 Tenn.App. 616, 340 S.W.2d 940; *Vermont Salvage Corp. v. Village of St. Johnsbury* (1943), 113 Vt. 341, 34 A.2d 188; *Mathewson v. Primeau* (1964), 64 Wash.2d 929, 395 P.2d 183.[6] Instead, aesthetics are the province of restrictive covenants, *See Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, *trans. denied* (upholding architectural restrictive covenants), and this is as it should be.

Aesthetic values are inherently subjective; if landowners in a given neighborhood or development wish to contract among themselves for the appearance of their homes, the courts stand ready, within well-settled limits, to provide enforcement. It would require a great leap of logic, however, to say that courts themselves should be the arbiters of proper aesthetics and good taste, and it is a leap we are unwilling to make. As the Colorado Supreme Court eloquently stated, "[i]n our populous society, the courts cannot be available to enjoin an activity solely because it causes some aesthetic discomfort or annoyance. Given our myriad and disparate tastes, life styles, mores, and attitudes, the availability of a judicial remedy for such complaints would cause inexorable confusion." *Green v.*

*Castle Concrete Co.* (1973), 181 Colo. 309, 316, 509 P.2d 588, 591.

In the present case, the evidence concerning the toilet seat is undisputed. The seat and lid are affixed to a piece of blue plywood with a painted brown spot. The plywood is framed and attached to a pole roughly 10 feet tall facing out of Wernke's yard. Wernke claimed the entire contraption was a bird house, and indeed, three small boxes with holes suitable for birds surround the frame. It may be the ugliest bird house in Indiana, or it may merely be a toilet seat on a post. The distinction is irrelevant, however; Wernke's tasteless decoration is merely an aesthetic annoyance, and we are not engaged in the incommodious task of judging aesthetics. The trial court erroneously entered summary judgment for the Halases on this issue, and again, because the evidence is undisputed, Wernke, not the Halases, is entitled to judgment as a matter of law.

*The Graffiti*

Like the toilet, the graffiti is unattractive and vulgar. Nonetheless, it is not a nuisance. The law, especially in nuisance cases, when rights to the free use of property are concerned, does not deal in trifles, and "mere annoyance or inconvenience will not support an action for a nuisance because the damages resulting therefrom are deemed *damnum absque injuria* in recognition of the fact life is not perfect." *Sherk v. Indiana Waste Systems, Inc.* (1986), Ind.App., 495 N.E.2d 815, 818.

Here, even if we were to ignore our summary judgment standard and view the evidence in the light most favorable to the Halases, the graffiti is a non-actionable trifle. The inscriptions "Fuck J.H.," "Fuck

---

5. The rule may well be different for public nuisances. *See, e.g., State, ex rel. Dresser Indus., Inc. v. Ruddy* (1980), Mo., 592 S.W.2d 789, 793 (quoting *Restatement (Second) of Torts* § 821B, Comment e at 91 (1977)).

6. If unsightliness is coupled with additional harms, however, such as pollution or a physical invasion, a private nuisance may be established. *See Griffin v. Northridge* (1944), 67 Cal.App.2d 69, 153 P.2d 800; *Allison, supra; Statler v. Cata-*

*lano* (1988), 167 Ill.App.3d 397, 118 Ill.Dec. 283, 521 N.E.2d 565, *appeal denied,* 122 Ill.2d 595, 125 Ill.Dec. 237, 530 N.E.2d 265.

Moreover, even without additional harms, a large amount of refuse, such as that associated with junkyards and salvage operations, may so essentially interfere with the comfortable enjoyment of life and property that it constitutes a nuisance. *See, e.g., Allison, supra,* at 794, and cases cited therein.

R.P.," and "D. Head"[7] are engraved in areas of concrete, no more than two feet in diameter, which surround the ground level bases of two of Wernke's fenceposts. The fenceposts themselves are located at least several inches over the property line onto Wernke's property *beyond* the Halases' own chain link fence, and the letters comprising the inscriptions are only three to four inches tall. In short, the graffiti is almost invisible from the Halases' yard, and it is not the appearance of the graffiti, but rather knowledge of its presence, that causes annoyance. Annoyance does not constitute a nuisance, *id.*, and the Halases can no more claim nuisance because they know Wernke has offensive inscriptions in his yard than they could if they knew Wernke had an offensive color scheme in his bathroom.

Moreover, freedom of expression is at issue here, and although the language is offensive and vulgar, it is a "bedrock principle underlying the First Amendment that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreea-ble." *Texas v. Johnson* (1989), 491 U.S. 397, 414, 109 S.Ct. 2533, 2544, 105 L.Ed.2d 342.[8] The graffiti simply is not a nuisance. The trial court erred in granting summary judgment on this issue.[9]

## III

## DAMAGES & ATTORNEY FEES

Because we have reversed the trial court's grant of summary judgment on all counts, the damage awards are necessarily reversed, as well. As for the award of attorney fees, it is well-settled that Indiana adheres to the American Rule, which requires parties to pay their own attorney fees absent a statute, rule, or agreement to the contrary. *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, 347, *trans. denied.* There are exceptions for obdurate behavior, a common fund situation, and private attorney general situations. *Id.* The obdurate behavior exception, upon which the Halases rely, is inapplicable here.

---

7. The record does not reveal the meaning of "D. Head," but the context of the phrase and the posture of the case leave little doubt it is not a complimentary phrase.

8. We are not confronted with, and therefore leave for another day, the question of whether some language may be presented so invasively to the privacy of the home that it could constitute an abatable nuisance within the confines of the First Amendment to the United States Constitution. *See, e.g., Frisby v. Schultz* (1988), 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (upholding ban on targeted residential picketing that intruded upon residential privacy); *F.C.C. v. Pacifica Foundation* (1978), 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (upholding ban on offensive radio broadcasts that invade the privacy of the home); *Rowan v. Post Office Dep't* (1970), 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (upholding ban on offensive mailings); *Kovacs v. Cooper* (1949), 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (upholding ban on noisy sound trucks that could be heard within homes).

9. In rendering judgment, the trial court entered thoughtful findings and conclusions. In a summary judgment case, however, these serve only to illustrate the trial court's reasons for its decision. *P.M.S., Inc. v. Jakubowski* (1992), Ind. App., 585 N.E.2d 1380, 1381, n. 1. On the issue of the graffiti, the findings and conclusions re-veal the trial judge weighed disputed testimony and made express credibility determinations. This is inappropriate in rendering a decision on a summary judgment motion. *HCA Health Services of Indiana, Inc. v. Gregory* (1992), Ind. App., 596 N.E.2d 974; *Jarrell, supra.*

Moreover, the judge stated he did not believe Wernke's testimony that vandals scrawled the graffiti in the concrete, and the Halases place great faith in this finding in their appellee's brief. It does not matter whether Wernke or vandals wrote the words; the question of their character as a *per accidens* nuisance is not resolved by who wrote them. *See Restatement (Second) of Torts* § 839 (1979). If the graffiti were a nuisance, however, the question whether Wernke created or merely maintained that nuisance would go to the punitive damages the trial court awarded.

Punitive damages, although available in private nuisance actions under certain circumstances, *see* Annotation, *Punitive Damages in Actions Based on Nuisance*, 31 A.L.R.3d 1346 (1970), have been rejected as inapplicable to the facts in both of the two reported Indiana cases in which they were sought. *Weddell v. Harner* (1890), 124 Ind. 315, 24 N.E. 368; *Morford v. Woodworth* (1855), 7 Ind. 83. They have not, however, been rejected outright, and because we have reversed the judgment in favor of the plaintiffs on all counts, we have no occasion to determine their availability today.

In *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, our supreme court said this exception provides a remedy for defendants who are dragged into baseless litigation. Moreover, the type of behavior which may be characterized as obdurate is a party's failure to dismiss the suit once its baseless nature is discovered. *Id.*

*Id.*, at 348.

Here, the Halases instituted the litigation, and even if the obdurate behavior exception applied to Wernke as a defendant, by no means is his continued defense against the Halases' action baseless, as our disposition of all three alleged nuisances makes clear. The attorney fee award was improper.

## CONCLUSION

The trial court erred in granting summary judgment to the Halases for all three alleged nuisances. Because there is no genuine issue of material fact, the summary judgment in favor of the Halases on all counts is reversed, and summary judgment is ordered for Wernke. The award of attorney fees was error, and is therefore also reversed.

ROBERTSON and MILLER, JJ., concur.