David **GERTZ** and Nichelle Gertz, Appellants–Defendants,

v.

Douglas **ESTES** and Susan Estes, Appellees–Plaintiffs.

No. 64A04–0708–CV–441.

Court of Appeals of Indiana.

Jan. 23, 2008.

---

P. Jeffrey Schlesinger, Merrillville, IN, Attorney for Appellants.

David R. Phillips, Valparaiso, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants David and Nichelle Gertz ("David and Nichelle") appeal the trial court's order that they remove their fence. We affirm.

### Issues

David and Nichelle raise two issues on appeal, which we re-order and re-state as follows:

I. Whether the trial court erred in applying the "spite fence" statute because David and Nichelle had obtained a local permit for the fence; and

II. Whether the trial court clearly erred in making its findings.

### Facts and Procedural History

Appellees–Plaintiffs Douglas and Susan Estes ("Douglas and Susan") resided in Hebron, with their two daughters and one son. David and Nichelle bought a neighboring home in 2003. At some point, David and Nichelle equipped their home with a public address system and installed four surveillance cameras on their barn. In 2004, the two families disputed the loca-

tion of the property line. While both families had surveys performed and thereby resolved the boundary dispute, relations between them deteriorated significantly. After a series of unpleasant events, David and Nichelle received a permit for and erected on their property an eight-foot wooden fence,[1] running parallel to and eight inches away from the property line. David estimated the cost of building the fence to be $16,000. All along the three supporting horizontal slats, nail points protruded from the side of the fence facing Douglas and Susan's property. The nails extended between a quarter- and a half-inch from the fence.

On September 13, 2005, Douglas and Susan filed a complaint, alleging that the fence violated the Indiana "spite fence" statute.[2] Appendix at 19. A bench trial was conducted in June of 2006. On April 24, 2007, the trial court made findings and ordered David and Nichelle to remove the fence, the public address system, and the surveillance cameras within thirty days. The trial court also ordered David and Nichelle to pay Douglas and Susan for damages amounting to $2500. Finally, the trial court entered protective orders prohibiting each family from contacting, harassing, or annoying the other family.

David and Nichelle now appeal, seeking to maintain their fence.[3]

## Discussion and Decision

### I. Spite Fence Statute

■ David and Nichelle argue that the statute is inapplicable because they received a local permit for the fence. Having a local permit, however, is irrelevant to application of the statute.

■ Indiana Code Section 32–26–10–1, titled "Description of spite fence," defines as a nuisance "a fence unnecessarily exceeding six (6) feet in height, maliciously erected ... for the purpose of annoying the owners or occupants of adjoining property." An injured landowner may bring a civil action for damages and abatement of the nuisance. Ind.Code § 32–26–10–2. These statutes "are in derogation of the common law, and must therefore be strictly construed." *Wernke v. Halas*, 600 N.E.2d 117, 121 (Ind.Ct.App.1992).

■ "[M]unicipal ordinances and regulations are inferior in status and subordinate to the laws and statutes of the state." *City of Indianapolis v. Fields*, 506 N.E.2d 1128, 1131 (Ind.Ct.App.1987). The statute makes no reference to conformity with local ordinances. Indeed, in creating a cause of action where a fence is "maliciously erected ... for the purpose of annoying the owners or occupants of adjoining property," the legislature made clear its motivation to address the intent of the builder, irrespective of other government regulation. The fact that the Porter County Department of Building and Planning issued a permit is inapposite. Moreover, even if the permit were relevant, the fence was not built in accordance with its terms.

### II. Findings of Fact

■ David and Nichelle argue that the trial court clearly erred in making its findings of fact. Specifically, they assert that Douglas and Susan failed to establish: (a)

---

**1.** The permit application indicated that the fence would be seven feet tall, not eight feet.

**2.** Ind.Code §§ 32–26–10–1 and –2.

**3.** David and Nichelle do not challenge the remainder of the trial court's order, including removal of the public address system and the surveillance cameras, the damages, and the reciprocal protective orders. Accordingly, we confine our review to the trial court's order that they remove their fence.

that the fence was unnecessary, and (b) that David and Nichelle used their public address system to make disparaging comments about Douglas and Susan's family.[4]

We review findings of fact for clear error. *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 965 (Ind.2006). " 'Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. . . .' Further, when evaluating findings of fact for clear error, 'we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom.' " *Horseman v. Keller,* 841 N.E.2d 164, 169 (Ind.2006) (quoting *Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031 (Ind. 2004)).

On appeal, the parties acknowledge the "[p]roblems" and "deteriorat[ion]" in their relationship. Appellee's Brief at 2; Appellant's Brief at 3. Initially on good terms, one night David and Nichelle demonstrated to Douglas and Susan that the view from any surveillance camera, or views from multiple cameras, could be viewed on David and Nichelle's television. When the families disputed their property line, their relationship soured. Douglas and Susan added onto their home and construction debris blew into David and Nichelle's yard. Nichelle left a voicemail message complaining about three pet cats Douglas and Susan used to control mice. David and Nichelle collected the cats and delivered them to animal control. Also, they called the sheriff at least eighteen times to report various activities of Douglas and Susan. In March of 2005, David and Nichelle installed on their chimney a camera capable of rotating 360 degrees and magnifying images by twenty-three times.

On February 28, 2005, David applied to Porter County to construct a seven-foot fence. The application, which was approved, indicated that the purpose of the fence was residential.

A row of trees ran along the property line, on David and Nichelle's property. Portions of the trees, however, hung over Douglas and Susan's property. Douglas and Susan sent a letter to David and Nichelle, stating that they planned to put up a fence along the property line and that David and Nichelle had a defined time to trim the trees. On June 16, 2005, David and Nichelle's attorney, Garry A. Weiss, wrote the following to Douglas and Susan's attorney: "Your clients should also be aware that my clients are now keeping the property under 24 hour surveillance as an additional precautionary measure." Ex. 5. At some point, David and Nichelle began building a large fence along the property line. As it was being erected, the deadline passed for David and Nichelle to trim their trees. Douglas then trimmed the trees.

Ultimately, David and Nichelle's wooden fence was actually eight feet high and 720 feet long. Constructed primarily of vertical slats, three horizontal slats provided support. They ran along the bottom, middle, and top of the fence. Nails protruded between a quarter- and a half-inch from the fence, placed in roughly two horizontal rows on each horizontal slat. Douglas testified as follows regarding the nails.

---

4. As indicated in footnote three, David and Nichelle do not challenge that portion of the trial court's order requiring them to remove the public address system. We note, however, that Douglas' testimony on this subject evidences the animosity between the families and therefore reflects on the potential motivation of David and Nichelle in constructing the fence. Douglas testified that "Mrs. Gertz is on [the public address system] on a continuous basis, making lewd comments to my kids, to my girls. They play music over it. They basically use it on a regular basis to aggravate and harass, make lewd comments to the girls." Transcript at 45. He gave an example, which we choose not to repeat. Tr. at 46.

A: [The nails] are on the entire length of the fence on all three boards that hold the upright boards up.

Q: So are we talking about thousands of protruding nails?

A: Yes.

Transcript at 59. The words "NO CLIMBING" and "NO TRESPASSING" were painted in orange and black on the middle horizontal slat. Ex. 10–12. Two cameras were mounted on top, making a total of seven surveillance cameras operated by David and Nichelle.

David testified that the fence was necessary to protect eighteen-inch tree seedlings that he had planted. The fence did not enclose any area. However, David testified that he and his wife intended to enclose the fence at some point so that they could raise llamas, alpacas, or sheep.

The trial court found that there was "no justifiable or necessary reason for the fence installed by [David and Nichelle] to exceed six (6) feet...." App. at 15. Furthermore, it found that "the fence was maliciously erected and now maintained for the purpose of annoying [Douglas and Susan]." *Id.* The evidence and the reasonable inferences drawn from it support the trial court's findings.

As to David and Nichelle's specific assertion, there was ample evidence that the fence was unnecessary and that it was not actually intended for agricultural purposes. Their application for a local permit indicated that the "use" of the fence was "residential." Ex. 14. The fence did not form an enclosure, making it useless for livestock. The parties' conduct and the extraordinary nature of the fence were adequate to overcome David's assertion that the eight-foot fence was intended to protect eighteen-inch tree seedlings. The trial court did not clearly err in making its findings.

## Conclusion

The trial court correctly concluded that receiving a local permit was not a defense for purposes of the spite fence statute. Furthermore, evidence supported the trial court's findings.[5]

Affirmed.

NAJAM, J., and CRONE, J., concur.

---

5. In their Reply Brief, David and Nichelle suggest that the trial court's order somehow violated the Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution. The argument is not cogent, not supported by authority, and was not raised in the Appellant's Brief. Accordingly, it is waived. Ind. Appellate Rule 46(A)(8)(a), (C); *Smith v. State*, 822 N.E.2d 193, 202–03 (Ind.Ct.App. 2005), *trans. denied.*