1190

Benjamin B. BLANKS and Mary Ann Blanks, Respondents v. Gary W. RAWSON, Appellant.

(370 S. E. (2d) 890)

Court of Appeals

*Richard H. Willis*, of *Nelson, Mullins, Riley & Scarborough*, Columbia, *for appellant.*

*Robert C. Ashley*, of *Kneece, Kneece, Ashley, Gibbons & Kneece*, Columbia, *for respondents.*

Submitted May 25, 1988.

Decided July 11, 1988.

CURETON, Judge:

This is a dispute between next door neighbors. Benjamin and Mary Ann Blanks claim their neighbor, Gary W. Rawson, has violated certain neighborhood restrictions by the construction of a dog pen, basketball goal, and ten-foot privacy fence. The trial judge ordered Mr. Rawson to remove or relocate the dog pen and basketball goal. He also ordered Rawson to remove or reduce the height of the fence. Rawson appeals. We affirm in part and reverse in part.

The Blanks and Rawson reside in the Indian Fork subdivision on Lake Murray in Lexington County. Both parties bought vacant lots and constructed homes. The subdivision was developed by Indian Fork Development Company. The company filed a "Declaration of Restrictions" which covered the lots in question. Rawson purchased his lot first. He constructed a home substantially identical to his prior home. In purchasing the property Mr. Rawson had discussions with a representative of Indian Fork Development Company. This representative was aware Rawson desired to build a house identical to his current home. The developer approved Rawson's house plans. The developer specifically gave permission to Rawson to vary the minimum set back requirements in the Declaration of Restrictions to accommodate his home on the lot and to locate the dog pen and basketball goal. The basketball goal is near the edge of the driveway close to the property line. The dog pen is on the property line behind the driveway.

Mr. and Mrs. Blanks purchased the lot to the right of Mr. Rawson. The developer advised the Blanks of Mr. Rawson's name because they desired to know who their neighbor would be. The Blanks rode by Rawson's old home to view it. At that time, the dog pen was behind the driveway on the property line. The dog pen in controversy is in the same location behind the driveway. The difference is Rawson has re-oriented the new house so the driveway is on the right side of the house as opposed to the left. This is the side next to the Blanks.

As the homes were being constructed, Mr. Blanks expressed objections personally and through counsel to Rawson about the dog pen and basketball goal because he felt they violated the minimum setback limits. Rawson had

already obtained the approval of the developer to vary the setback limits when these objections were raised. Paragraph Seven of the Declaration of Restrictions provides "no building shall be closer to any side boundary than fifteen (15) feet ... provided further that the Declarant [Indian Fork Development Co. Inc.] reserves the right to vary all such setback lines at will."

Shortly after the complaint was served, Rawson constructed a ten foot privacy fence. The fence shields the basketball goal and the dog pen from the Blanks. As with the dog pen and goal, Rawson obtained the permission of Indian River Development Company to build the fence. This permission was received in December of 1985 although construction of the fence did not occur until May 1986.

The Blanks complain the dog pen and basketball goal violate the minimum setback limits and are a nuisance. They claim the dog barks and the dog pen is not properly maintained thereby creating a foul odor. They complain Rawson's son plays loud music and his basketball comes into their yard. As to the fence, they complain it is too high and blocks the view of the lake they previously enjoyed across Rawson's property. The trial court found the nearness of the basketball goal to the property line created a nuisance whenever the basketball was thrown toward the goal. The court found that if the ball hits the goal it creates a noise and if it misses the goal, it can go into the Blank's yard. The court found the nearness of the dog pen to the property line created a nuisance because it was not properly maintained and the sight and smell of dog feces was revolting. As to the fence, the court called it a "hate fence" not in keeping with the intentions of a high level residential neighborhood and not in keeping with what is right as opposed to what is wrong. The court held it was wrong for the fence to obstruct the Blanks' view of the lake across the Rawsons' backyard.

The complaint alleges violation of restrictions and seeks an injunction. As previously noted, Paragraph Seven of the Declaration of Restriction deals with setback requirements. Paragraph Eight provides "no noxious or offensive activity ... shall be had or done upon any lot in the subdivision and nothing shall be had or done thereon which constitutes or becomes an annoyance or nuisance to the neighborhood or

constitutes an unsanitary condition." Paragraph Twelve indicates the restrictions shall run with the land. Paragraph Thirteen gives an owner a right to sue any other owner of real property in the subdivision in order to restrain a violation of the restrictions.

An action for an injunction is equitable. *State v. Yelsen Land Co.*, 257 S. C. 401, 185 S. E. (2d) 897 (1972). Since this is an action in equity tried by a single judge, this court on appeal may decide whether the evidence supports the factual findings based upon our own view of the preponderance of the evidence. *Palmetto Dunes Resort v. Brown*, 287 S. C. 1, 336 S. E. (2d) 15 (Ct. App. 1985).

Mr. Rawson did not violate Paragraph Seven of the subdivision restrictions concerning the setback limits. The evidence is undisputed he received express permission from Indian Fork Development Company to locate the dog pen, basketball goal, and fence. The restrictions in Paragraph Seven concerning setbacks specifically provide the company has the right to vary all setback lines at will.

The trial rested its conclusions on a concept of nuisance. Paragraph Eight prohibits the creation of an annoyance or nuisance to the neighborhood. Neither a basketball goal nor a dog pen is a nuisance *per se*. They may be a nuisance *per accidens* if they become a nuisance by reason of circumstances, location, or surroundings. A nuisance has been defined as "anything which works hurt, inconvenience, or damages, anything which essentially interferes with the enjoyment of life or property (citations omitted)." *Strong v. Winn-Dixie Stores, Inc.*, 240 S. C. 244, 253, 125 S. E. (2d) 628, 632 (1962).

The South Carolina Supreme Court has recognized that the resolution of the issue of a private nuisance involves the conflicting interests of landowners. "The right of one to make such lawful use of his property as he may desire must be applied with due regard to the correlative right of the other to be protected in the reasonable enjoyment of his property." *Winget v. Winn-Dixie Stores Inc.*, 242 S. C. 152, 159, 130 S. E. (2d) 363, 367 (1963). Each case must be decided upon its own facts, and the observation of the Supreme Court regarding neighbors is particularly relevant:

> "[E]very annoyance or disturbance of a landowner from the use made of property by a neighbor does not constitute a nuisance. The question is not whether the plaintiffs have been annoyed or disturbed ... but whether there has been an injury to their legal rights. People who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances consequent upon the reasonable use of property by others."

*Winget*, 242 S. C. at 159, 130 S. E. (2d) at 367.

From our review of the record, we do not find evidence to support the conclusion the basketball goal is a nuisance. Mr. Blanks testified to only one instance when Mr. Rawson's son was playing basketball and he asked the boy to turn down the radio. He also complained the ball could bounce over into his yard and damage his air conditioner unit or shrubs. There is no evidence this damage has occurred. The pictures in the record do not show any shrubs in the yard although Blanks stated they planned to plant some. At most, the Blanks complain about an anticipatory nuisance in this respect.

The debate over the dog pen concerns how often and how well it is cleaned. The trial court heard the testimony and reviewed photographs. The dog is a large breed. The Rawsons testified they cleaned the pen daily. Mr. Blanks stated it was not cleaned on a regular basis. Blanks testified the odor was still present with the fence in place. The trial court found the dog pen was maintained in a filthy condition and an odor was created by its condition. In this equity action, the Court of Appeals has the authority to make findings of fact in accordance with its own view of the preponderance of the evidence, however, it is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility. *Pee Dee State Bank v. Prosser*, _____ S. C. _____, 367 S. E. (2d) 708 (Ct. App. 1988). Given the conflicting evidence on this issue, we affirm the trial judge.

The final issue is the fence. The Blanks object to its height primarily because it restricts their view of the lake. Before the fence was constructed, they could sit on their back porch and look at the lake across the Rawson property. Rawson

received permission from the developer to construct the fence.

The Declaration of Restrictions does not contain language creating a covenant of view for any lot owner.

South Carolina does not recognize a prescriptive easement of view. *Hill v. The Beach Company,* 279 S. C. 313, 306 S. E. (2d) 604 (1983).

Perhaps recognizing the inherent problem in arguing there could be no fence, Mr. Blanks testified he would be satisfied if the fence were reduced to eight feet near the basketball goal and six feet down to the water. The trial court apparently felt the fence was ill motivated, but did not find it was a nuisance. The court stated the fence was not in keeping with the intentions of a high-level residential development.

Motive in constructing the fence is not relevant to this case. The question is whether the fence violates a restriction. Based upon our view of the evidence, it does not. It is unfortunate relations among neighbors have degenerated to this point, but it appears the fence may be the best resolution of this controversy. While the Blanks no longer have a panoramic view of the lake, both parties have their privacy.

The decision of the trial court is

Affirmed in part and reversed in part.

GARDNER and GOOLSBY, JJ., concur.