2168

Francis A. LeFURGY and Priscilla R. LeFURGY, Respondents v. LONG COVE CLUB OWNERS ASSOCIATION, INC., Appellant.

(443 S.E. (2d) 577)

Court of Appeals

556

*Russell S. Stemke,* of Charleston; and *Mark H. Lund, III,* Hilton Head Island, *for appellant.*

*Thomas C. Taylor,* Hilton Head Island, *for respondents.*

Heard March 8, 1994.

Decided April 18, 1994.

CURETON, Judge:

The respondents, Francis and Priscilla LeFurgy, brought this action seeking to permanently enjoin the appellant, Long Cove Club Owners Association, Inc. (Long Cove), from using

a newly constructed golf tee box adjacent to the LeFurgys' property on the ground the tee box constituted a nuisance. From the order of the master-in-equity granting the injunction and declaring the tee box both a common law nuisance and a nuisance pursuant to the Protective Covenants of the Long Cove Club Owners Association, Long Cove appeals. We reverse and remand.

An action for an injunction is equitable. *Blanks v. Rawson*, 296 S.C. 110, 370 S.E. (2d) 890 (Ct. App. 1988). In an action in equity tried by the judge without a reference, we have jurisdiction to find facts in accordance with our own view of the preponderance of the evidence. *Id.; Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 391 S.E. (2d) 538 (1989).

Long Cove owns and operates a golf course and driving range in the Long Cove Plantation, a private golf course development planned for 600 owners who buy and build upon lots surrounding an 18-hole golf course. The LeFurgys' home is located adjacent to and between the fairways for the tenth and eighteenth holes of the golf course. In September 1991, Long Cove had a new golf tee box constructed on the common property owned by Long Cove. The new tee box is located approximately seventy-five to one hundred feet away from the LeFurgys' house. Prior to the construction of the new tee box, this area was used to give lessons, as a practice area, and as an overflow driving range.

After the installation of the new tee box, the LeFurgys complained that it constituted a nuisance because of noise generated through its use. According to the LeFurgys, the tee box is used only a few times daily.[1] Specifically, the LeFurgys assert that the increased noise level is the result of loud conversations between the golfers, the clicking sound created by the hitting of golf balls, and the sound of golf carts. They also complained that the tee box enabled people to look into their home from the tee area. In response to the LeFurgy's complaints, Long Cove planted about six or seven wax myrtles and crepe myrtles to screen the area. Still unsatisfied, the LeFurgys commenced this suit. Although other homes abut the playing area of the golf course at a closer

---

[1] Mr. LeFurgy testified the tee box was used approximately three times a day.

proximity than the LeFurgys', none of these neighbors joined in this lawsuit, nor did any of them testify.

The master-in-equity heard this case nonjury and entered injunctive relief for the LeFurgys, declaring the tee box a nuisance, both as defined in Section 10 of the Long Cove Protective Covenants and under the common law. On appeal, Long Cove contends the master erred in finding the activities complained of rise to the level of a nuisance under either the Protective Covenants or common law. After a careful review of the record and the law, we are constrained to hold that the LeFurgys are not entitled to an injunction.

The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willfully or wantonly neglected. *Carter v. Lake City Baseball*, 218 S.C. 255, 62 S.E. (2d) 470 (1950); *Forest Land Co. v. Black*, 216 S.C. 255, 57 S.E. (2d) 420 (1950). In cases where an injunction is sought to abate an alleged private nuisance, the court must deal with the conflicting interests of the landowners by balancing the benefits of an injunction to the plaintiff against the inconvenience and damage to the defendant, and grant or deny an injunction as seem most consistent with justice and equity under the circumstances of the case. *Id.; see also Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 130 S.E. (2d) 363 (1963).

Even in the conduct of a lawful business, an owner of property is subject to reasonable limitations. If a lawful business is operated in an unlawful or unreasonable manner so as to produce material injury or great annoyance to others or unreasonably interferes with the lawful use and enjoyment of the property of others, it will constitute a nuisance. *Winget*, 130 S.E. (2d) at 367. While the business of operating a golf course is a legitimate one and not a nuisance *per se*, it may become a nuisance *per accidens* by reason of its improper location, surroundings, or the manner in which it is conducted. *See Welborn v. Page*, 247 S.C. 554, 148 S.E. (2d) 375 (1966); *Home Sales, Inc. v. City of North Myrtle Beach*, 299 S.C. 70, 382 S.E. (2d) 463 (Ct. App. 1989).

Nevertheless, as stated in *Winget*, people living in organized communities must suffer some annoyance and inconvenience from each other incident to city life:

. . . [E]very annoyance or disturbance of a landowner from the use made of property by a neighbor does not constitute a nuisance. The question is not whether the plaintiffs have been annoyed or disturbed by the operation of the business in question, but whether there has been an injury to their legal rights. People who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances consequent upon the reasonable use of property by others.

*Winget,* 130 S.E. (2d) at 367.

Since the degree of annoyance or inconvenience necessary to constitute an actionable nuisance cannot be generally quantified, each case must depend largely on its own facts. *Home Sales,* 382 S.E. (2d) at 470; *see also* 66 C.J.S. *Nuisances* § 18(a) at 764 (1950). In the instant case, the LeFurgys chose to reside on property abutting a golf course,[2] and as found by the master, were alerted to the fact that they would be on a driving range.

The master concluded, however, that the LeFurgys were not alerted to the facts as they subsequently developed, namely that a tee box, the apex of the driving range, would be facing them. Relying on representations in a brochure published by the developer of Long Cove, the master found that the LeFurgys had the right to rely on the general plan of the development at the time they purchased their home because the brochure promised "the entire community is being planned now, so there will never be any surprises or sudden changes to disappoint you."

The record is devoid of assurances made by the developer sufficient to mislead the LeFurgys into believing the use of the driving range would not change from its level of operation at the time of their purchase. When the LeFurgys purchased their lot, the driving range was being utilized primarily at its end opposite from their home. However, there is no indication in the record that the LeFurgys were given assurances that

---

[2] ". . . [O]ne who deliberately decides to reside in the suburbs on very desirable lots adjoining golf clubs and thus receive the social benefits and other not inconsiderable advantages of the country club surroundings must accept the occasional, concomitant annoyances." *Nussbaum v. Lacopo,* 27 N.Y. (2d) 311, 317 N.Y.S. (2d) 347, 350-52, 265 N.E. (2d) 762, 765 (1970).

the driving range would continue to be used from only that end. The LeFurgys were on notice of the potential for increased use of the driving range and admitted that they suspected the driving range would eventually be used as an overflow. Therefore, any representations by the developer regarding major changes to the subdivision could not have misled the LeFurgys into believing that there would never be an increased use of the driving range from the end nearest their home.

Considering the character of the activity creating the noise complained of, i.e., golfing activities in a golf community, and considering that by necessity such activity is confined to daylight hours and occurs only a few times each day, we do not think the location of the tee box or the manner in which the golf course is being operated constitutes a common law nuisance subject to injunction. The appealed order was erroneous in its contrary holding.

The master also found that the tee box amounts to such a violation of the privacy rights of the LeFurgys as to constitute a nuisance under Section 10 of the Protective Covenants of the Long Cove Club. We disagree.

Section 10 of the Protective Covenants provides as follows:

> No noxious or offensive activity shall be carried on upon the property, nor shall anything be done thereon tending to cause embarrassment, discomfort, annoyance or nuisance *to the neighborhood.* There shall not be maintained any plants or animals, or any device or thing of any sort whose normal activities or existence is in any way noxious, dangerous, unsightly, unpleasant or of a nature as may diminish or destroy the enjoyment of the other lots on the property of the lot owners thereof. There shall be no discharging of firearms, guns or pistols of any kind, caliber, type or any method of propulsion. (Emphasis added.)

Section 10 of the Protective Covenants is specifically made applicable to only those nuisances affecting the entire "neighborhood." It is uncontroverted that the LeFurgys are the only persons who have voiced an objection to the tee box or use of the surrounding area. Section 10 is not intended to apply to private nuisances such as the one com-

plained of by the LeFurgys. Therefore, there is no "nuisance to the neighborhood" as set forth in the express terms of the Protective Covenants, and consequently, no violation of Section 10 of the Protective Covenants and no ground for an injunction.[3] *See Hamilton v. CCM, Inc.*, 274 S.C. 152, 263 S.E. (2d) 378, 381 (1980) (holding that if language of a restrictive covenant is capable of two or more constructions, the construction which least restricts the property must be adopted).

Finally, Long Cove challenges the award of attorney fees on the ground that the master failed to consider the six factors enumerated in *Collins v. Collins*[4] in determining the award of attorney fees. Since we have altered the results obtained at trial, we do not think the LeFurgys' recovery of $3,600 in attorney fees can be justified. We therefore reverse the award of attorney fees.

For the forgoing reasons, the appealed order is reversed and the case is remanded with directions to enter judgment in accordance with this decision.

Reversed and remanded.

HOWELL, C.J., and SHAW, J., concur.

---

[3] While we think the use of the tee box may be an inconvenience or annoyance to the LeFurgys, mere annoyance or inconvenience will not support an action for a nuisance. 58 Am. Jur. (2d) *Nuisances* § 92 (1989).

[4] The six factors to consider in determining an award of attorney fees are: (1) the nature, extent and difficulty of the legal services rendered; (2) the time and labor devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar services, and; (6) the beneficial results obtained. *Collins v. Collins*, 239 S.C. 170, 122 S.E. (2d) 1 (1961); *Baron Data Systems, Inc. v. Loter*, 297 S.C. 382, 377 S.E. (2d) 296 (1989).