645 S.E.2d 252

**Carol C. SHAW, Charles W. Shaw, III, J. Roth Snowden and Delia S. Snowden, Respondents,**

v.

**Christopher M. COLEMAN, Appellant.**

**No. 4241.**

Court of Appeals of South Carolina.

Submitted Dec. 1, 2006.

Decided April 30, 2007.

---

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

486

488

Laura Catherine Tesh, of Columbia, Lourie A. Salley, III, of Lexington, for Appellant.

Edgar Lloyd Willcox, II, of Florence, for Respondents.

BEATTY, J.:

Christopher Coleman appeals a permanent injunction preventing him from discharging firearms on his property or immediate surroundings, firing air rifles or pellet guns toward Carol and Charles Shaw's and Roth and Delia Snowden's property or person, and yelling or otherwise provoking the Shaws or the Snowdens. We affirm as modified.[1]

## FACTS

Coleman lives between the Shaws' and the Snowdens' property on a stretch of land mainly composed of woods and swamp. The properties stretch across Holly Road in Marion, South Carolina. The Snowdens moved to their property in 1959. Coleman bought his one-acre property in 1990. The Shaws purchased their land in 1992.

After numerous problems with Coleman beginning in August of 2002, including harassing behavior and his firing of weapons on and off his property, the Shaws and the Snowdens brought a nuisance action seeking a permanent injunction[2] of Coleman's use of firearms, damages for Coleman's alleged

---

1. This case was originally scheduled for oral argument. Because the parties agreed to submit this case on the record and briefs, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. The trial court granted a temporary injunction by order dated August 17, 2004.

violation of section 31–18–30 of the South Carolina Code (2007),[3] damages for alleged conversion, and damages and a permanent injunction for alleged trespass.[4] Ultimately, the court's ruling was limited to the question of whether a permanent injunction should be issued.

As a threshold matter, the trial court had to determine whether Coleman had a shooting range on his property because Coleman attempted to use section 31–18–30 of the South Carolina Shooting Range Protection Act (the Act) as a defense. In reaching this decision, the trial court heard two days of testimony and visited the property with the parties.

Terry and Violette Thompson purchased ten acres from the Snowdens in August of 2002. Coleman had previously expressed an interest in purchasing this land, but the offer was rejected. Prior to the sale, the Snowdens did not have any problems with Coleman. Ms. Shaw testified that before the sale she heard four or five shots on Coleman's land over two to three months. According to Patricia Rowell, who also lives near Holly Road, Coleman fired guns occasionally prior to August of 2002, and after August of 2002, Coleman's shooting was continuous. When the Thompsons bought the property, the frequency of Coleman's shooting greatly escalated. The Thompsons sold their property back to the Snowdens in October of 2003 due to Coleman's continued shooting.

Ms. Shaw testified that Coleman planned to run the Thompsons off the property because he wanted to purchase it. Mr. Shaw concurred with his wife when he testified that Coleman did not want anyone living on the property the Thompsons purchased, and that he planned to run the Thompsons off of their land. Additionally, Mason Draper, a neighbor, discussed the Thompsons with Coleman. According to Draper, Coleman

---

3. As will be more fully discussed, section 31–18–30 of the South Carolina Code is one of the statutory provisions comprising the "South Carolina Shooting Range Protection Act of 2000." S.C.Code Ann. §§ 31–18–10 to –60 (2007).

4. In a pre-trial ruling, the court denied the Shaws' and the Snowdens' motion to amend their complaint to include the conversion claim. At the conclusion of the Shaws' and Snowdens' case, the court also directed a verdict in favor of Coleman as to the trespass claim.

stated that he would keep shooting until the Thompsons moved.

Other nearby property owners experienced similar treatment by Coleman when they sold a portion of their property to a party other than Coleman. The Stackhouses testified that Coleman appeared at their residence screaming that they could not sell their property. In addition, following Frank Shaw's purchase of land near Coleman's property, Coleman followed Shaw and filmed him with a video camera.

There was also testimony that Coleman did not limit his shooting to his property, but instead, targeted specific individuals. Both Mr. Shaw and Mr. Snowden testified that Coleman fired bullets over their heads. Additionally, Mr. Snowden watched Coleman fire his rifle over the Thompsons' property. Ms. Thompson also saw Coleman firing over a public road and over her head and her son's head. Thomas Nolan witnessed Coleman crouched down near the Shaws' property while wearing a side-arm holster.

In addition to Coleman's shooting, witnesses also described Coleman's harassing and threatening behavior. Mr. Shaw stated that Coleman took pictures of him. Mr. Thompson testified that while he was driving on a dirt road, Coleman appeared and drove erratically behind him while waving a gun. Coleman also repeatedly fired an air cannon on his land.

During this contentious time, Travis Rowell delivered thirty tons of dirt to Coleman's property in December of 2002. Rowell deposited the dirt on a small mound with targets, which was already present prior to the delivery. Additionally, Coleman installed slats on his chain link fence in response to noise complaints.

In presenting his case, Coleman testified that he wanted to become a shooting instructor and met Charles Shortsleeve, an instructor, in 2003. Coleman claimed he taught as many as fifty people about guns. He further testified that he first obtained a business license for the Sports Shooting Club on his property in 1992, and the license is still effective. Coleman acknowledged the license was for "gun smithing activities."

On behalf of Coleman, several people testified regarding firearms being shot on Coleman's property. Ray Williams testified he fired guns on Coleman's property from 1997 to 2001. Between 1990 and 1993, Vicky Bostic observed Coleman shooting at his backstop a few times. Stacey Jordan fired guns on Coleman's property as early as 1993. Brian Polston remembered firing guns on Coleman's property as early as 1997.

Robert Butler, who was involved in drafting several amendments to the Act, stated he saw distance markers and a backstop between ten and twelve feet on Coleman's property the morning of his testimony. Butler believed that Coleman's property met the requirements of the Act.

After the hearing, the trial court issued an order on May 9, 2005. The court held under section 31–18–20 that Coleman's property was not a shooting range because. "the primary use of [Coleman's] property is as a residence for Mr. Coleman, and the use of weaponry is a collateral use incident to his residence at the property." Based on this analysis, the court held that Coleman "may not avail himself of the protections of the South Carolina Shooting Range Act," and found that the Act did not apply to Coleman's property. As a result of these findings, the court permanently enjoined Coleman from discharging firearms on his property or the surrounding property, from discharging air rifles or pellet guns toward the Shaws' or Snowdens' property or person, and from screaming obscenities at the Shaws or the Snowdens or otherwise provoking the Shaws or the Snowdens. This appeal followed.

## STANDARD OF REVIEW

"Actions for injunctive relief are equitable in nature." *Wiedemann v. Town of Hilton Head Island,* 344 S.C. 233, 236, 542 S.E.2d 752, 753 (Ct.App.2001). "In an action in equity tried by the judge without a reference, we have jurisdiction to find facts in accordance with our own view of the preponderance of the evidence." *LeFurgy v. Long Cove Club Owners Ass'n,* 313 S.C. 555, 557, 443 S.E.2d 577, 578 (Ct.App. 1994). However, this scope of review does not require us to disregard the findings of the trial court that saw and heard the witnesses and was in a better position to judge their

credibility. *Blanks v. Rawson*, 296 S.C. 110, 114, 370 S.E.2d 890, 893 (Ct.App.1988).

## DISCUSSION

### I. Shooting Range Protection Act

 Coleman argues the trial court erred in granting the permanent injunction because section 31–18–30 of the Act protects his shooting range from this nuisance action. We disagree.

Relying on the provisions of the Act, the trial court found that Coleman's property, which was his residence, was not a shooting range given that firing firearms was not the "usual, regular, and primary activity occurring in the area." S.C.Code Ann. § 31–18–20(1)(b) (2007). Coleman asserts the trial court "erred as a matter of law in interpreting the statute to per se exclude Coleman's property because he lives there."

 Because the disposition of this case turns on the interpretation of the Act, we must rely upon the rules governing statutory construction. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the Legislature." *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005). "Where the terms of the statute are clear, the court must apply those terms according to their literal meaning, without resort to subtle or forced construction to limit or expand the statute's operation." *Cooper v. Moore*, 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002). An issue regarding statutory interpretation is a question of law. *S.C. Uninsured Employer's Fund v. House*, 360 S.C. 468, 470, 602 S.E.2d 81, 82 (Ct.App.2004).

Section 31–18–20 defines a shooting range as follows:

(1) "shooting range" or "range" means an area that is:

(a) designated, utilized, and operated by a person for the firing of firearms; where

(b) the firing of firearms is the usual, regular, and primary activity occurring in the area; and where

(c) the improvements, size, geography, and vegetation of the area are such that a projectile discharged from a firearm at a target would not reasonably be expected to

escape its boundaries by virtue of the trajectory of the projectile, or by virtue of a backstop, berm, bullet trap, impact barrier, or similar device designed to prevent the escape of such projectiles.

(2) "person" means an individual, partnership, limited liability company, corporation, club, association, governmental entity, or other legal entity.

(3) "substantial change in use" or "substantial change in the use" means that the current primary use of the range no longer represents the activity previously engaged in at the range.

S.C.Code Ann. § 31–18–20 (2007).

On Coleman's one-acre property there is his residence as well as an area specifically designated for firing weapons, which includes a backstop or berm. Coleman also offered evidence that he has a valid business license and all the appropriate permits to operate firearms on the property. Additionally, two witnesses, Butler and William Powell, testified Coleman has established a shooting range which complies with the Act. Based on this evidence, we believe Coleman's property constituted a shooting range and fell within the ambit of the statute. Accordingly, we find the trial court erred in excluding Coleman's property from the protection of the Act because the property was his residence and shooting was not the sole activity conducted on the property.

■ Although the classification of Coleman's property as a shooting range implicates section 31–18–30 of the Act, that section does not necessarily preclude the Shaws and the Snowdens from bringing their nuisance claim or provide Coleman with absolute immunity from the claim. Section 31–18–30 states in pertinent part:

(A) Except as provided in this subsection, a person may not maintain a nuisance action for noise against a shooting range, or the owners, operators, or users of the range, located in the vicinity of that person's property if the shooting range was established as of the date the person acquired the property. If there is a substantial change in the use of the range after the person acquires the property, the person may maintain a nuisance action if the action is

brought within three years from the beginning of the substantial change.

(B) A person who owns property in the vicinity of a shooting range that was established after the person acquired the property may maintain a nuisance action for noise against that shooting range, or the owners, operators, or users of the range, only if the action is brought within five years after establishment of the range or three years after a substantial change in use of the range.

S.C.Code Ann. 31–18–30 (2007). As evidenced by the terms of the statute, a nuisance claim may be filed against the owner of a shooting range, but it must be filed within specific time limits. We believe the Shaws and the Snowdens filed their claim in compliance with the above-outlined section.

The Shaws purchased their land in 1992, and the Snowdens moved to their property in 1959. Coleman bought his one acre property in 1990. The record indicates people fired guns on Coleman's property for many years. However, the intensity greatly increased in 2002. In addition, Travis Rowell delivered thirty tons of dirt to Coleman's property in December of 2002, which served as a backstop for firing guns. Moreover, Coleman at that time began taking certification classes and attempted to put up signs to make the public aware of the existence of a shooting range. Therefore, we find that while shooting occurred sporadically on Coleman's property, the shooting range was not established until 2002.

The Shaws and the Snowdens filed their initial complaint against Coleman on May 13, 2004. This filing was well within the five years after the establishment of a range allowed under section 31–18–30(B). Therefore, although the trial court misapplied section 31–18–20 regarding the existence of a shooting range on Coleman's property, we find this error is harmless given section 31–18–30(B) does not protect Coleman from the filing of the nuisance action.

Having found the Act is applicable and that the Shaws and the Snowdens properly filed their claim, we must determine whether Coleman's conduct created a nuisance sufficient to warrant a permanent injunction.

In explaining the theoretical underpinnings for the procedure employed in assessing whether a nuisance has been created, our court has stated:

In resolving issues relating to a private nuisance, we must deal with the conflicting interests of land owners. To establish the line beyond which one's exercise of his property rights becomes a legal infringement upon the property rights of another requires a delicate balancing of the correlative rights of the parties; the right of one generally to make such lawful use of his property as he may desire and the right of the other to be protected in the reasonable enjoyment of his property.

*O'Cain v. O'Cain,* 322 S.C. 551, 560, 473 S.E.2d 460, 465 (Ct.App.1996) (citations omitted).

 "The traditional concept of a nuisance requires a landowner to demonstrate that the defendant unreasonably interfered with his ownership or possession of the land." *Silvester v. Spring Valley Country Club,* 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct.App.2001). "[N]uisance is a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." *Id.; see Blanks v. Rawson,* 296 S.C. 110, 113, 370 S.E.2d 890, 892 (Ct.App.1988) ("A nuisance has been defined as 'anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property.' " (quoting *Strong v. Winn–Dixie Stores, Inc.,* 240 S.C. 244, 253, 125 S.E.2d 628, 632 (1962))). "If a lawful business is operated in an unlawful or unreasonable manner so as to produce material injury or great annoyance to others or unreasonably interferes with the lawful use and enjoyment of the property of others, it will constitute a nuisance." *LeFurgy,* 313 S.C. at 558, 443 S.E.2d at 579. "Since the degree of annoyance or inconvenience necessary to constitute an actionable nuisance cannot be generally quantified, each case must depend largely on its own facts." *Id.* at 559, 443 S.E.2d at 579. "The question is not whether the plaintiffs have been annoyed or disturbed by the operation of the business in question, but whether there has been an injury to their legal rights." *Id.*

Beginning in 2002, Coleman fired guns continuously, over roads, over property, and over individuals. Coleman also

caused excessive noise by firing an air cannon on his property. Several of Coleman's neighbors testified they felt threatened by Coleman's actions. Mr. Snowden also stated that Coleman's actions prevented him from selling any area property. Based on this evidence, we hold Coleman's conduct on his shooting range constituted a nuisance that was not based solely on excessive noise. *See O'Cain*, 322 S.C. at 562, 473 S.E.2d at 466 ("While a business may be a legitimate one and not a nuisance *per se*, it may become a nuisance *per accidens* by ... the manner in which it is conducted."). Therefore, we find the trial court correctly determined Coleman created a nuisance in that he unreasonably interfered with the Shaws' and the Snowdens' ownership and possession of their property.

We believe our decision is consistent with the intent of the Legislature in establishing the Act. As both parties agree, property owners near shooting ranges will undoubtedly be annoyed by the noise created by the firing of weapons. However, if the conduct on the shooting range becomes such as to be a nuisance, a property owner must have some recourse to abate the nuisance. As we understand the Act, the Legislature clearly intended to protect the investments of shooting range owners by establishing a limitation on when a nuisance claim may be filed against them. *See* Act No. 260, 2000 S.C. Acts 1924 (providing that enactment of South Carolina Shooting Range Protection Act of 2000 was "to regulate nuisance actions in connection with the acquisition of property near existing shooting ranges, the establishment of shooting ranges near existing property, and dormant shooting ranges...."). This limitation assures that property owners may not move to an area where a shooting range has been established and then assert a nuisance claim. Instead, by permitting a property owner to file a nuisance claim, within established statutory time limits, the Legislature effectively balanced the competing interests of the shooting range owners and their neighbors. Here, the Shaws and the Snowdens properly filed their legitimate nuisance claim within the governing statute of limitations.

## II. Permanent Injunction

Even if his shooting range does not have absolute immunity from a nuisance action under the Act, Coleman

argues a permanent injunction is an extreme remedy, which is not appropriate because the Shaws and the Snowdens have alternative legal remedies available. We disagree.

"The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willfully or wantonly neglected." *LeFurgy,* 313 S.C. at 558, 443 S.E.2d at 578. "In cases where an injunction is sought to abate an alleged private nuisance, the court must deal with the conflicting interests of the landowners by balancing the benefits of an injunction to the plaintiff against the inconvenience and damage to the defendant, and grant or deny an injunction as seem most consistent with justice and equity under the circumstances of the case." *Id.*

In its order, the trial court recognized the serious nature of an injunction and acknowledged the need to balance the parties' conflicting interests and pointed to evidence of Coleman's "confrontational and threatening behavior." We agree with the trial court and find the preponderance of the evidence shows that Coleman's conduct on his shooting range constitutes a private nuisance and should be enjoined.

The Shaws and the Snowdens testified Coleman willfully fired a rifle towards his neighbors and over their land. There was also testimony that Coleman created excessive noise through the use of an air canon. Based on Coleman's actions, several of the neighbors testified that they felt threatened. Mr. Snowden also testified that Coleman's actions prevented him from selling any area property. Therefore, we agree with the trial court that "Mr. Coleman unreasonably interfered with their ownership and possession of their land." Although we recognize, as did the trial court, the injunction will inconvenience Coleman by preventing him from maintaining his shooting range and being an instructor, the safety benefits to the Shaws and the Snowdens outweigh the inconvenience suffered by Coleman. *See Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.,* 624 N.W.2d 796, 804 (Minn.Ct. App.2001) (affirming trial court's decision to issue a permanent injunction and finding that gun club's conduct at shooting range created a nuisance where neighbors were apprehensive about going outside on their property during times of shoot-

ing, went indoors to avoid the noise, experienced bullets or shotgun pellets passing over their heads, and saw "signs of indiscriminate shooting on the club property"); *see also* F.S. Tinio, Annotation, *Gun Club, or Shooting Gallery or Range, as Nuisance,* 26 A.L.R.3d 661 (1969 & Supp.2007) ("The remedy generally availed of by persons who have been injured or have suffered damages on account of the maintenance of shooting galleries, gun clubs, or shooting ranges, is injunction. The grant or denial of this remedy depends on the relevant surrounding circumstances and the evidence presented by the plaintiff.").

Additionally, Coleman suggests the Shaws and the Snowdens have legal actions available to them, and thus, a permanent injunction as an equitable remedy was not appropriate. Coleman is correct that equity is reserved for situations where there is no adequate remedy at law. *See Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n,* 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989) ("Equitable relief is generally available only where there is no adequate remedy at law."). The Shaws and the Snowdens, however, are seeking an injunction to prevent Coleman's dangerous behavior, which cannot be adequately accomplished by an award of damages.

In their amended complaint, the Shaws and the Snowdens sought an injunction to prevent the "continuous discharging of firearms and threatening of plaintiffs" in addition to actions for damages for alleged trespass, conversion, and violation of section 31–18–30. Mr. Snowden saw Coleman firing onto people's property and over individuals' heads. Coleman also fired over Ms. Thompson's and her son's head. Because the desired action is to prevent Coleman's dangerous activity, an injunction is appropriate in this case. Therefore, we affirm the trial court's decision to grant a permanent injunction. *See O'Cain,* 322 S.C. at 561, 473 S.E.2d at 466 ("A lawful business should not be enjoined on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or overly sensitive person, but on the other hand, no one, whatever his circumstances or condition may be, should be compelled to leave his home or live in mental discomfort, although caused by a lawful and useful business carried on his vicinity.").

In reaching our decision, we have considered the cases from other jurisdictions which were submitted by Coleman. Upon review, we find these cases are factually distinguishable, particularly those that discuss excessive noise as the sole basis to bar nuisance actions against shooting ranges. Moreover, we are unable to glean a general rule from these cases for which to resolve the very fact-specific determination of whether to issue a permanent injunction based on a nuisance claim. Balancing the benefits of an injunction to the Shaws and the Snowdens against the inconvenience and damage to Coleman, we hold the trial court correctly granted the injunction.

## CONCLUSION

We find the trial court erred in concluding that Coleman did not own a shooting range solely on the basis that he resided on the property at issue. Because we believe Coleman did own a shooting range beginning in 2002, we hold the Act was applicable. We also hold the Shaws and the Snowdens properly filed and established a claim for nuisance against Coleman. Finally, we affirm the trial court's decision to grant a permanent injunction.

For the reasons stated herein, the trial court's decision is **AFFIRMED AS MODIFIED.**

HEARN, C.J. and SHORT, JJ., concur.